STEVEN F. GRUEL (CSBN 213148)
Attorney at Law

655 Montgomery Street, Suite 1700
San Francisco, California 94122
Telephone Number (415) 989-1253
Fax Number (415) 576-1442
attystevengruel@sbcglobal.net

Attorney for David Nosal

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-08-0237-MHP |
| ) | |
| Plaintiff, ) | DEFENDANT DAVID NOSAL'S |
| ) | FIRST STATUS MEMORANDUM |
| Vs. ) | |
| ) | Honorable Marilyn Hall Patel |
| DAVID NOSAL, et. al., ) | |
| ) | May 19, 2008 @ 10:00 a.m. |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

Defendant David Nosal, by and through his attorney, Steven F. Gruel, hereby submits this First Status Memorandum for the May 19, 2008 hearing scheduled before the Court.

I. FIRST STATUS MEMORANDUM

A. Introduction

Recently, the Honorable David O. Carter in the Central District of California warned of the dangers that result from private companies conducting their own investigations, and then subsequently presenting the "evidence" to the government for prosecution. Judge Carter noted that "When an investigation is driven by a private entity, the process is deprived of the same

DEFENDANT DAVID NOSAL'S FIRST STATUS MEMORANDUM
- 1

level of prosecutorial judgment and discretion that accompanies a typical government investigation conducted from scratch." In <u>United States v. Shiah,</u> Case Number SA-CR-06-92-DOC, Judge Carter, in a bench trial, acquitted Tien Shiah of violating federal offenses alleging the stealing and misappropriating of "trade secrets" from his former employer Broadcom Corporation and then allegedly taking the secrets to his new employer Marvell Semiconductor, Incorporated. In acquitting Mr. Shiah, Judge Carter opined that Mr. Shiah's actions very likely subjected him to civil liability, but that a guilty verdict would have a "chilling effect on the ability of employees to move freely from one company to another." Although he didn't know it, Judge Carter's warning and sound reasoning apply to this case as well.

B. <u>Summary of the Case</u>

Korn / Ferry is a billion dollar executive search corporation headquartered in Los Angeles with offices throughout the globe. Executive search involves locating and placing high level executives in management openings for major domestic and foreign corporations.

David Nosal was an employee of Korn / Ferry from 1996 to October 2004. Mr. Nosal headed a Korn / Ferry office in the Bay Area. As an executive search partner, Mr. Nosal was Korn / Ferry's top performer for his entire tenure. Within the industry, Mr. Nosal's name carries considerable goodwill and influence.

The 2004 separation between Mr. Nosal and Korn / Ferry was not amicable. An agreement was crafted wherein for one year Mr. Nosal, although no longer an employee, was to continue to assist Korn / Ferry with 15 open searches, refrain from competing with Korn / Ferry and, at the end of July 2005, was to receive over $1,000,000 from the corporation as the bonus he had earned for the past year's work. Significantly, nothing prohibited Mr. Nosal from taking the

steps to set up his own executive search company which would, of course, compete with Korn / Ferry.

Shortly after his separation from Korn / Ferry, news of Mr. Nosal's departure spread. In fact, when a major Korn / Ferry prospective client inquired about rumors that Mr. Nosal was no longer with the corporation, Korn / Ferry personnel lied and assured the client that Mr. Nosal was still on the Korn / Ferry team.

From November 2004 to July 2005 Mr. Nosal worked on his open searches for Korn / Ferry. He also began to set up his own company which was expected to launch around November 2005. On August 2, 2005, however, instead paying Mr. Nosal the million dollar bonus it owed to Mr. Nosal, Korn /Ferry filed a civil lawsuit in San Mateo Superior Court against Mr. Nosal and others. Further, the corporation under its agreement with Mr. Nosal filed an arbitration complaint in Los Angeles. Additionally, in mid July 2005, it contacted the FBI and assisted in orchestrating several FBI raids.[1]

The Los Angeles branch of O'Melveny & Myers LLP filed these civil complaints. Initial discovery from the prosecution makes clear that they worked "hand-in-glove" with the government.[2]

These coordinated efforts were calculated efforts to mow down Mr. Nosal and preclude him from starting a company which would compete with Korn / Ferry. Since August 2005, Mr.

---

[1] A *Wall Street Journal* story was planted by Korn / Ferry to coincide with the August 2, 2005 FBI searches. The timing of that detailed story, which ran the very next day after the search warrants, shows that the WSJ was informed well in advance of KFI's civil attack and FBI searches. Obviously, KFI was trying to get the most "bang for the buck" with a civil, criminal and media attack against its upcoming competitor, Mr. Nosal.

[2] The Los Angeles office of O'Melveny & Myers LLP also served as counsel for Broadcom Corporation in the private investigation which was the turned over to the United States Attorney's office in the Central District for prosecution in the case thrown out by Judge Carter.

Nosal's firm has had rapid industry success in the marketplace. This success, by the way, includes numerous former KFI employees *jumping ship* to work with Mr. Nosal.

Nearly three years after the FBI search warrants, the government decided to seek an indictment charging mail fraud, theft of trade secrets and illegal computer intrusion. The allegations in the indictment essentially mirror and stem from the very matters in litigation in the two civil matters. In fact, as this Court will learn, the government only interceded to put a stop to the arbitration proceeding when the Nosal civil litigation team began to depose Korn / Ferry's witnesses. The alleged trade secret allegedly stolen in this case is a data base called "Searcher." Numerous witnesses, mainly former Korn / Ferry employees describe "Searcher" as outdated, without safeguards and valueless.

1. <u>Summary of the Civil Litigation Involving The Complaint and Arbitration</u>

The Nosal defense does not intend at this stage to detail the events of the above civil matters. A few points are worth noting as this prosecution, however, goes forward. These points include:

    a. Korn / Ferry clearly intended to take advantage of placing civil defendant David Nosal in the difficult position of being sued while also being investigated for criminal wrongdoing. In other words, Korn / Ferry wanted to squeeze Mr. Nosal with the invocation of his Fifth Amendment Right against self-incrimination while facing the consequences of the invocation of this Constitutional safeguard in the civil cases;

    b. Korn / Ferry's attorneys repeatedly and vigorously opposed several civil motions by Mr. Nosal's counsel at the time, (Joseph Russionello and others from the Cooley Goddard law firm) to stay the civil matters until the criminal investigation concluded;

    c. Civil discovery revealed that Korn / Ferry suspected trade secret and agreement violations by Mr. Nosal and others as early as March 2005. Yet, it appears from

the limited discovery thus received in the criminal case, that Korn / Ferry and its counsel waited until July 2005 to contact federal law enforcement about the alleged wrongdoing. The March 2005 detection of the alleged theft of Searcher material apparently did not genuinely concern Korn / Ferry until, of course, Mr. Nosal's work for them was complete and his $1,000,000 was due to be paid by the corporation;[3]

d. David Nosal waived his Fifth Amendment Rights in the civil cases, agreed to his deposition and also voluntarily talked to the FBI and prosecution about this case;

e. A civil deposition of Mark Jacobson, now a government cooperator, resulted in unearthing damaging testimony and numerous contradictions fatal to issues such as Mr. Nosal's knowledge of others' wrongdoing and the value or use of Searcher. On the eve of this deposition, O'Melveny & Myers prepared a declaration for Mr. Jacobson which has already surfaced in the prosecution's discovery;

f. After numerous previous objections by Mr. Nosal seeking a stay of the civil proceedings, Korn / Ferry's counsel embraced an unexpected request by the prosecution on March 15, 2007 to the Los Angeles arbitrator to stay all proceedings. Since that request, all civil proceedings have stopped, including the noticed depositions of Korn /Ferry's management and experts;

g. In numerous letters and discussions with the prosecution, counsel for Mr. Nosal outlined law, the facts and Department of Justice policy that overwhelming

---

[3] Even the O'Melveny & Myers attorneys in the Broadcom case didn't wait if true trade secret was stolen. The lawyers immediately contacted the government the same month [September 2003] when it believed that a trade secret had been stolen.

DEFENDANT DAVID NOSAL'S FIRST STATUS MEMORANDUM
- 5

establish that these disputes with KFI are civil, not criminal matters.  Long time federal prosecutor and two-time United States Attorney, Mr. Russionello while with Cooley, completely agreed with this sound conclusion.

B.  Procedural History of the Case /  Pretrial Release

On April 25, 2008, Magistrate Judge James Larsen arraigned Mr. Nosal on the indictment. His not guilty pleas were entered to all counts.  Mr. Nosal is on pretrial release awaiting trial.

C.  Discovery To Date / Protective Order /  Discovery in the Possession of KFI

To date the government has provided approximately 1995 pages of discovery.  The government has circulated a Stipulation and Proposed Order for a Protective Order to receive an expected larger volume of materials that will be placed on a hard drive.

Given that Korn / Ferry  and its counsel at O'Melveny & Myers played a critical role in independently investigating , referring  and then working with the both the FBI and prosecution in this case,  relevant discovery exists with these private parties.  On May 1, 2008, Mr. Nosal's defense counsel requested and the prosecutor agreed to contact both Korn / Ferry and O'Melveny & Myers and notify them not to destroy any evidence in this case.   The defense has not heard whether this government request has been issued and what response, if any, was given by the private parties.  To that end, the Nosal defense will seek this Court's order preserving this evidence in the possession of  Korn /  Ferry and O'Melveny & Myers.

D.  Speedy Trial

On May 19, 2008, the Speedy Trial date is calculated to be July 28, 2008.   Although Mr. Nosal seeks trial on this matter as soon as possible, he is willing to agree to a finding of

excludable time until the next scheduled court date for effective preparation of counsel. The amount of discovery in this case, as well as defense counsel's heavy schedule which includes a wiretap trial before Judge Ware in August 2008 supports the finding of excludable time. The defense does not expect the government to object to this request.

E. <u>Anticipated Pretrial Motions Pretrial Preparation By Mr. Nosal</u>

The Nosal defense anticipates considerable pretrial work in this case. For instance, a severance motion based upon a <u>Bruton</u> issue is anticipated. Discovery motions and defense subpoenas *duces tecum* are likely to be presented to the Court. To date, pretrial motions and evidentiary hearings are likely to include:

 a. A defense motion and evidentiary hearing wherein "Searcher" is argued not to be a trade secret;

 b. A defense motion and evidentiary hearing wherein the agreement by Korn / Ferry against Mr. Nosal's competition is argued to be void and unenforceable because it violates California law, statues and public policy;

 c. A defense motion to dismiss the indictment in its entirety pursuant to the Court's supervisory powers.

F. <u>Waiver Matter</u>

Prior to representing Mr. Nosal, undersigned counsel represented an individual who was subpoenaed by O'Melveny & Myers LLP as part of one of the civil cases. This individual was also interviewed by the FBI. This person may be a trial witness for the government or Mr. Nosal. Appropriate disclosures and waivers have been made to both this person and Mr. Nosal. If necessary, and to protect all privileged attorney-client communications, these disclosures and waivers can be shared with the Court *in camera*.

G.  <u>Mr. Nosal's Recommendation Regarding Scheduling</u>

Mr. Nosal recommends that the case be continued for 6-8 weeks to allow for further discovery form the government.  As mentioned above, the Speedy Trial Act provides several grounds (effective preparation of counsel) for excludable time.

Dated: May 15, 2008              /s/
                                 STEVEN F. GRUEL
                                 Attorney for David Nosal