1  LATHAM & WATKINS LLP
   Steven M. Bauer (State Bar No. 135067)
2  505 Montgomery St., Suite 1900
San Francisco, California 94111-2562
3  Telephone: (415) 391-0600
Facsimile: (415) 395-8095
4
Attorneys for Defendant
5  Becky Christian

8  UNITED STATES DISTRICT COURT

9  NORTHERN DISTRICT OF CALIFORNIA

10  SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID NOSAL and<br>BECKY CHRISTIAN,<br><br>    Defendants. | No. CR-08-0237-MHP<br><br>**DEFENDANT BECKY CHRISTIAN'S MOTION TO SEVER**<br><br>The Honorable Marilyn Hall Patel<br>Courtroom 14<br>Date: June 16, 2008<br>Time: 11:00 a.m. |

       Defendant Becky Christian, by and through her attorney of record, Steven M. Bauer of Latham & Watkins, LLP, respectfully moves the Court for an order severing this indictment into separate cases against each defendant.

**TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ................................................................................................................ 1

II. SUMMARY OF RELEVANT FACTS .............................................................................. 3

    A. Background ................................................................................................................ 3

    B. Antagonistic Defenses ............................................................................................... 4

III. ARGUMENT ........................................................................................................................ 6

    A. The Court Has Broad Discretionary Authority To Sever The Trials Of Defendants With Antagonistic Defenses. ............................................................ 6

    B. Severing The Trial Of Becky Christian From Defendant Nosal Is Necessary To Prevent Manifest Prejudice To Becky Christian's Right To A Fair Trial. ............................................................................................... 8

IV. CONCLUSION .................................................................................................................. 10

## I. INTRODUCTION

The government accuses Becky Christian and her former boss, David Nosal, of conspiring to breach Nosal's non-compete agreement with their former employer, Korn/Ferry International, and of taking executive recruiting contact data from Korn/Ferry's computers. On these basic allegations, the government charges 19 counts of mail fraud, trafficking in passwords, accessing private computer systems with intent to defraud, theft and possession of trade secrets, and conspiracy. The indictment alleges identical charges against each defendant.

Far from being identical, however, the defendants' respective defenses directly contradict each other. Ms. Christian will present what we believe is compelling evidence that she never intended to defraud Korn/Ferry but instead, that Nosal pushed and manipulated her and others beneath him to help him in his business activities. Because of this role, Nosal was fully aware of each person's actions. The data Ms. Christian actually obtained from Korn/Ferry after she left the Company amounted to bits and pieces of rolodex-like contact information, not, as the government contends, precious trade secrets. Disillusioned by Nosal's lack of integrity on personal and professional matters alike, Defendant Christian broke off her relationship with Nosal before she was aware any investigation had begun. Once she did become aware of the investigation, Christian immediately offered to cooperate with both Korn/Ferry and the government. In fact, after Ms. Christian was interviewed by the U.S. Attorney's Office and the FBI, the prosecutor said that her testimony was truthful and, moreover, that it was helpful to the prosecution's case. Likewise, Korn/Ferry dropped its lawsuit against Ms. Christian in recognition of her cooperation and her return of contested funds.

In contrast, defendant Nosal has stated unequivocally that his defense to the indictment is that Becky Christian and his other subordinates committed various crimes on their own, without his knowledge or urging. In fact, on April 24, 2008, Defendant Nosal took the extraordinary step of distributing a lengthy press release – which includes several objectively inaccurate factual assertions -- that attacks Korn/Ferry for alleged malfeasance and accuses Ms. Christian and others of misconduct. Nosal's press release goes so far as to criticize his subordinates for invoking their Fifth Amendment rights at times during the Nosal investigation.

Nosal's press release sets up a swearing match between his word and Ms. Christian's word.

In sum, Nosal's defense and Ms. Christian's defense cannot both survive in the presence of each other. Nosal has even insisted on asserting his ownership of 80% of the funds that Ms. Christian has agreed to return to Korn/Ferry. Without commenting on which defense is credible, it is clear that this is a classic case of antagonistic defenses.

The government has broad discretion under Federal Rule of Criminal Procedure 8(b) to join defendants in a single case but, at the same time, the Court has equally broad discretion under Rule 14 to sever defendants when it appears that justice would be better served by trying the defendants separately. Severance is the better course in this case for two basic reasons:

First, defendants Christian and Nosal have such antagonistically different defenses that trying them together makes each, in effect, a second prosecutor against the other. Ms. Christian certainly will be prejudiced if she must defend against these 19 counts while her former boss's strategy is to accuse her of crimes, to blame her for his problems with Korn/Ferry, to claim ignorance of her actions, and otherwise to impugn her honesty.

Second, severance is likely to lead to shorter, more efficient, and far more manageable trials. Trying these cases separately will avoid a complex joint trial in which two defense camps pursue entirely different pretrial and trial strategies, attack each other, and implicate *Bruton* confrontation clause issues as well as Fifth Amendment issues. Separate trials will also avoid putting this Court in the difficult position of testing the permissible limits of limiting jury instructions on evidence important to Ms. Christian but potentially devastating to Nosal (described below). In addition, as Ms. Christian's counsel explained to the Court on May 19, 2008, Ms. Christian can be ready to try a steam-lined case this summer, while Nosal's counsel is seeking a lengthy delay.

For these reasons, we request that the Court exercise its discretion both to achieve the ends of justice and to do so efficiently, by holding separate trials for Ms. Christian and Nosal.

## II. SUMMARY OF RELEVANT FACTS

### A. Background

Beginning in 1997 and continuing until December 2004, Becky Christian was a subordinate of David Nosal at Korn/Ferry. Nosal was a senior manager at Korn/Ferry, was one of its primary business-generators, and is 15 years older than Ms. Christian. During part of this time, defendant Christian was entangled in an abusive personal relationship with Nosal. When Nosal left Korn/Ferry in a pique over being passed over for promotion to Korn/Ferry President, he persuaded Christian (and others) to leave Korn/Ferry as well. Ms. Christian continued doing contract work for Korn/Ferry after resigning. At the same time, the personal and professional relationship with defendant Nosal continued. Nosal referred her to his attorneys at Cooley Godard to set up a small executive search firm, Christian & Associates, in which Christian would do the vast majority of the actual work, but from which Nosal would receive 80% of the revenue. *See* FBI-302 memorandum of Becky Christian interview (December 14, 2006).

At about the same time, Defendant Nosal recruited several of his former subordinates at Korn/Ferry to form a larger executive search firm, Nosal Partners. Defendant Christian never worked for Nosal Partners. Rather, in mid-July 2005, before Nosal Partners became fully operational and before she had any inkling of a pending investigation, she broke off her contacts with Nosal, professional and personal. When she did this, Nosal began a frightening intimidation campaign against Ms. Christian. Nosal's campaign stretched over many months, and employed tactics such as round-the-clock telephone calls, multiple emails and voicemails with messages designed to intimidate (such as threatening that she would never work in the executive search industry again) and "coincidentally" appearing in front of her apartment or at her favorite restaurants. *Id.*

The government alleges that Nosal and his subordinates used contact information (names, addresses, cell phone numbers) for executive search candidates that they obtained from Korn/Ferry's contacts database, both before they left Korn/Ferry and after. The government also alleges that some of the revenue of Christian & Associates was owed to Korn/Ferry under

1    Nosal's non-compete agreement with Korn/Ferry (a contract to which Becky Christian was not a

2    party). Moreover the government claims that Nosal's personal receipt of funds from Korn/Ferry

3    under the non-compete agreement was a mail fraud not only by Nosal but by Christian – even

4    thought Becky Christian did not receive any of this money.

5            When this investigation began, Nosal proposed that he pay the legal fees of each

6    subordinate. Ms. Christian declined.

7        B.    <u>Antagonistic Defenses</u>

8            The defenses of Becky Christian and Defendant Nosal are fundamentally

9    antagonistic. Ms. Christian's defense will focus on the utterly minor nature of the alleged

10   "misappropriations" from Korn/Ferry (such as names, cell phone numbers and email addresses

11   of candidates with whom she had worked at Korn/Ferry) and her lack of intent to defraud or

12   otherwise harm Korn/Ferry. She will present evidence showing that she had no role in Nosal's

13   non-compete agreement, that she herself had no severance or non-compete agreement with

14   Korn/Ferry, and that she did not join Nosal Partners. Far from concocting some mail fraud or

15   conspiracy to harm Korn/Ferry and to help Nosal, she endured an abusive relationship with

16   Nosal, in which she feared him and his obsessive, abusive emails and phone calls, his "drive

17   bys" of her home, and his professional threats. She ultimately concluded that defendant Nosal is

18   not a person of integrity and broke with him completely.

19           In contrast, Defendant Nosal and his counsel have made it clear that they will be

20   "second prosecutors" of Becky Christian. They will seek Nosal's acquittal by claiming that the

21   alleged misconduct flowed from the "independent actions" of Becky Christian and his other

22   subordinates, without his knowledge. This contention is not guesswork on our part. Nosal has

23   signaled, unambiguously, that he intends to argue that Christian is guilty of alleged offenses.

24           On April 24, 2008, shortly after the government filed this indictment, Nosal

25   issued a press release and distributed an email to clients, responding to the charges. (See Bauer

26   Declaration). In that press release, he states:

27       •    The charges against him are only an attempt by Korn/Ferry to attack him

28           as a competitor.

1  • The charges "do not relate to Nosal Partners," but rather, "to the actions of
2  individuals who anticipated eventually joining Nosal Partners, but who
3  were running their own search firms." He later identifies the individuals
4  he accuses as Becky Christian and Mark Jacobson.
5  • The underlying civil lawsuit brought by Korn/Ferry did not accuse Nosal
6  of taking anything; Nosal was not subpoenaed or searched; and "the
7  lawsuit resulted from the independent actions of four other individuals."
8  (These are some of the demonstrably inaccurate statements referred to
9  above.)
10 • He claims that "it is very clear that the government examined those initial
11 claims and concluded that the individuals who downloaded information
12 acted independently and with no oversight, input or involvement on David
13 [Nosal]'s part."
14 • He alleges that this case "involves work requested by clients after David
15 left Korn/Ferry and executed by individuals who established their own
16 firms -- Christian & Associates and Jacobson Search Partners -- while
17 waiting to join Nosal Partners after it launched. Specifically, the
18 government claims that the individuals who executed those assignments
19 received information from a Korn/Ferry employee to help complete the
20 work. As with the original Korn/Ferry claim (thrown out in civil court),
21 the government is trying to associate David with the independent work of
22 others."
23 • He states: "David will once again prove in court that whatever
24 communication took place between these partners and Korn/Ferry while
25 they were operating under their own companies' brands had nothing to do
26 with him or with the firm that he later launched, Nosal Partners."
27 • He criticizes Christian and others by commenting on their exercise of
28 constitutional rights: "The other three individuals pleaded the 5th

Amendment and would not agree to depositions for fear of self-incrimination."

Likewise, in his recent "status memorandum," Nosal and his counsel make clear that his defense will hinge on attacking Korn/Ferry and alleging that his former colleagues, including Becky Christian, engaged in "wrongdoing."

## III. ARGUMENT

### A. The Court Has Broad Discretionary Authority To Sever The Trials Of Defendants With Antagonistic Defenses.

Federal Rule of Criminal Procedure 14 permits the Court to order "an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires," even where offenses and defendants are initially properly joined under F.R.C.P. 8(b). This Court has broad discretion in making this assessment. *United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004). A need for severance can arise at anytime throughout the course of a criminal case, as has happened here when defendant Nosal announced his defense strategy with his post-indictment press release. The trial court has a continuing duty, during all stages of a case, including trial, to exercise its discretion evaluate the need for a severance when a continued joinder will result in undue prejudice to a defendant. *See Schaffer v. United States*, 362 U.S. 511, 514, *rehearing denied*, 363 U.S. 858 (1960).

Rules 8(b) and 14 are designed to promote economy and efficiency and to avoid a multiplicity of trials, but these rules favor joint trials only where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial. *See United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993) (rev'd on other grounds) (citing *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968)). Following this standard, the federal courts have ordered severance of defendants for trial in cases where "there is a serious risk that a joint trial would prejudice a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); see also *United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991); *United States v. Mayfield*, 189 F.3d 895 (9th Cir. 1999). These specific trial rights include the "unavailability of full cross-

examination" and the "lack of opportunity to present an individual defense." *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir.), *cert. denied*, 449 U.S. 856 (1980).

When co-defendants raise antagonistic defenses that are irreconcilable and mutually exclusive, a discretionary severance is particularly appropriate. *United States v. Angwin*, 271 F.3d 786, 795 (9th Cir. 2001). Permitting a joint trial in such circumstances amounts to "manifest prejudice" when 'the core of the co-defendant's defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant." *United States v. Johnson*, 297 F.3d 845, 858 (9th Cir. 2001).

In *Tootick*, 952 F.2d at 1082 (9th Cir. 1991), the Ninth Circuit discussed why antagonistic, irreconcilable defenses require a severance. Defendants who accuse each other "bring the effect of a second prosecutor into the case with respect to their co-defendant" as counsel for the co-defendant "must do everything possible to convict the other defendant." *Id.* at 1082. "The existence of this extra prosecutor is particularly troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor." *Id*. Second, normal trial tasks such as cross-examination of government witnesses, the defendant's witnesses and the presentation of the co-defendant's case become opportunities to emphasize the exclusive guilt of the other defendant. *Id*. Third, joinder can provide individual defendants with perverse incentives in their quest to demonstrate the culpability of their co-defendant. *Id*. Finally, the joinder of defendants asserting mutually exclusive defendants produces fringe benefits for the prosecution in that the defendant must "not only contend with the effects of the government's case against him, but he must also confront the negative effects of the codefendant's case." *Id*.

Fundamentally, then, the Court must determine whether denying severance will thwart the underlying purpose of Rule 14 to protect a defendant from assault by two prosecutors – the government and his codefendant. *United States v. Sherlock*, 962 F.2d 1349, 1363 (9th Cir. 1989). Moreover, jury instructions or other measures employed by the district court cannot necessarily avoid the risk of prejudice. Although the law presumes that juries properly follow

limiting instructions, the Ninth Circuit has recognized that circumstances arise in which it is unrealistic to expect a jury to follow such instructions, thus requiring a severance. *United States v. White*, 766 F. Supp. 873, 891 (E.D. Wash. 1991).

B. <u>Severing The Trial Of Becky Christian From Defendant Nosal Is Necessary To Prevent Manifest Prejudice To Becky Christian's Right To A Fair Trial</u>.

Even at this early stage in this case, it is apparent that a joint trial of Becky Christian and Defendant Nosal places her right to a fair trial in jeopardy.

First, a joint trial will leave Ms. Christian in the untenable position of battling not only the government prosecutor, but a second prosecutor -- Mr. Nosal and his counsel -- who will not be bound by the same institutional restraints and conduct standards as is the government. Defendant Nosal has made no secret that he intends to defend himself by aggressively asserting the guilt of his subordinates, which including Ms. Christian. From opening statements through each cross-examination to each legal brief, defendant Nosal and his counsel will have an incentive to put this strategy into action by joining the prosecution in attacking Ms. Christian, in an effort to deflect culpability away from Nosal himself. As Nosal has framed it in his press release, he intends to pursue a zero-sum game, under the theory that each accusation against Ms. Christian is a form of exoneration for Nosal. This is precisely the situation that the Ninth Circuit confronted in *Tootick*, and strongly counsels that severance is necessary and appropriate here.

Second, central and critical components of Ms. Christian's defense will be harmful to defendant Nosal, which will likely result in his efforts to seek to preclude the evidence on Rule 403 grounds or join the prosecution's efforts to discredit or to minimize it. For example, evidence of Nosal's threats, intimidation and near-stalking of Ms. Christian support her defense that she acted at his behest and at was a highly-pressured response to Nosal's intimidation and abuse -- not with intent to harm Korn/Ferry. Nosal will seek to exclude this evidence due to its obvious prejudicial impact -- the jury likely will find his conduct appalling -- and because it tends to show his bad intent overall. In a joint trial faced with evidentiary motions, the Court will have the nearly impossible task of weighing the importance of this evidence to Ms. Christian against its harm to defendant Nosal. One method of dealing with this

evidence – some kind of limiting instruction – will be particularly difficult for a jury to follow.

In addition, Ms. Christian will present evidence of being misled repeatedly by Nosal, and of seeing him repeatedly attempt to mislead others. This evidence, too, is critical to her ability to establish her lack of intent and lack of responsibility for the actions of others working with Nosal. Defendant Nosal, one expects, will fight against the admission of this evidence, as it could be seen as character evidence revealing his lack of veracity in a fraud trial. Limiting Ms. Christian's ability to present this evidence out of concern for Nosal in a joint trial would unfairly hinder her ability to receive a full and just hearing of her defense, and of the actual underlying facts.

Third, the Court has already had a glimpse of how different the trial strategies of defendants Nosal and Christian are likely to be. Among other things, Defendant Nosal intends to try the case on the theory that Korn/Ferry, as part of its alleged vendetta against Nosal, somehow manipulated the government into bringing the case. He paints himself as a suppressed whistle-blower, impugning Korn/Ferry's conduct and ethics. In contrast, Korn/Ferry quickly settled its case against Ms. Christian follwing her cooperation, and has been supportive of her in this difficult process. Moreover, Defendant Nosal has informed the Court that he intends to file many pre-trial motions, including motions directly challenging many of the indictment's allegations, a strategy that potentially will drag this case out for months or years. In contrast, Defendant Christian would like a prompt trial on the indictment itself.

The potential for profound unfairness issues to arise from these conflicting approaches is great. It seems fair to predict that these conflicts will become greater, rather than lesser, as the case proceeds.

Finally, in exercising its discretion, the Court is entitled to consider each of the factors that typically favor joint trials -- trial management, efficiency, and the due administration of justice. In this case, these factors actually favor a severance. Each of the two separate trials will be considerably less complex than a joint trial A joint trial which will force the Court to mediate between the directly conflicting aims of the two defendants. In contrast, Defendant Christian's stand-alone trial will be dramatically shorter and simpler than a joint trial. One

1  would expect that a stand-alone Nosal trial will also be shorter than a joint trial.  It is even likely
2  that the two separate trials combined will be shorter than a more complicated joint trial would be.
3  Certainly, the evidentiary and trial management issues will be far easier to address fairly and
4  effectively in separate trials.

5  **IV.     CONCLUSION**

6  A joint trial of Becky Christian with her former superior, David Nosal, will
7  inevitably result in unfair prejudice to her flowing from the fact that Defendant Nosal and his
8  counsel clearly intend to offer an aggressively antagonistic defense theory.  Defendant Nosal and
9  his counsel have made clear that Nosal will not simply claim that he himself is not guilty, but
10 rather, they will claim that he is not guilty *because* Becky Christian and other junior employees
11 of Korn/Ferry allegedly are guilty.  For this reason, a joint trial would manifestly prejudice
12 Becky Christian.  The Court should exercise its sound discretion to sever her trial from that of
13 Defendant Nosal.

14 DATED: May 30, 2008                               LATHAM & WATKINS LLP

16                                                    By  /s/
17                                                        Steven M. Bauer
                                                          Attorneys for Defendant Becky Christian