AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☑ INDICTMENT   ☑ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA

## OFFENSE CHARGED

See Attachment

☐ Petty
☐ Minor
☐ Misde- meanor
☑ Felony

PENALTY:
See Attachment

### DEFENDANT - U.S.

▶ DAVID NOSAL

*FILED*

DISTRICT COURT NUMBER
CR 08-0237 MHP

JUN 2 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## PROCEEDING

Name of Complaintant Agency, or Person (&Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. Att'y   ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW DOCKET NO.

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on THIS FORM
Brian J. Stretch, Acting U.S. Att'y

☑ U.S. Att'y   ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)
Kyle F. Waldinger

## DEFENDANT

**IS NOT IN CUSTODY**
   Has not been arrested, pending outcome this proceeding.
1) ☑ If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges    } ☐ Fed'l   ☐ State

   If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No   } If "Yes" give date filed

DATE OF ARREST ▶ ___ Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ ___ Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☑ NO PROCESS*   ☐ WARRANT   Bail Amount: ___

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Defendant Address:

Date/Time: ___

Before Judge: ___

Comments:

FILED

**Attachment to Penalty Sheet**
**United States v. David Nosal and Becky Christian**
**CR 08-0237 MHP**
**Superseding Indictment**

JUN 2 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

### Offenses Charged

| | |
|---|---|
| Count One: | 18 U.S.C. §§ 1832(a)(5) & 371 – Conspiracy to Misappropriate, Receive, Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a Protected Computer, Exceed Authorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer |
| Counts Two through Nine: | 18 U.S.C. §§ 1030(a)(4) & 1030(c)(3)(A) – Unauthorized Access to a Protected Computer with Intent to Defraud and Obtaining Something of Value |
| Count Ten: | 18 U.S.C. §§ 1832(a)(1), 1832(a)(2) & 1832(a)(4) – Theft, Misappropriation, and Unauthorized Downloading of Trade Secrets |
| Count Eleven: | 18 U.S.C. §§ 1832(a)(3) & 1832(a)(4) – Unauthorized Receipt and Possession of Stolen Trade Secrets |
| Counts Twelve through Nineteen: | 18 U.S.C. § 1341 — Mail Fraud |
| Count Twenty: | 18 U.S.C. § 1349 — Conspiracy to Commit Mail Fraud |

### Penalties

| | |
|---|---|
| Count One: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Counts Two through Nine: | 5 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Count Ten: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Count Eleven: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |

FILED

Counts Twelve
through Nineteen:

20 years' imprisonment, $250,000 fine or twice the gross gain or gross
loss, 3 years of supervised release, $100 special assessment  JUN 2 6 2008

Count Twenty:

20 years' imprisonment, $250,000 fine or twice the gross gain or gross
loss, 3 years of supervised release, $100 special assessment

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☑ INDICTMENT
                                    ☑ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA

### OFFENSE CHARGED

See Attachment

☐ Petty
☐ Minor
☐ Misde-meanor
☑ Felony

PENALTY:
See Attachment

DEFENDANT - U.S.

FILED

▶ BECKY CHRISTIAN

JUN 2 6 2008

DISTRICT COURT NUMBER
CR 08-0237 MHP

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

### PROCEEDING

Name of Complaintant Agency, or Person (&Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. Att'y  ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW DOCKET NO.

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on THIS FORM     Brian J. Stretch, Acting U.S. Att'y
☑ U.S. Att'y   ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)     Kyle F. Waldinger

### DEFENDANT

**IS NOT IN CUSTODY**

1) ☑ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges      } ☐ Fed'l ☐ State

If answer to (6) is "Yes", show name of institution ____

Has detainer been filed?   ☐ Yes   ☐ No
If "Yes" give date filed ____

DATE OF ARREST ▶ Month/Day/Year ____

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year ____

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☑ NO PROCESS*   ☐ WARRANT   Bail Amount: ____

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

Date/Time: ____

Before Judge: ____

Comments:

**Attachment to Penalty Sheet**
<u>**United States v. David Nosal and Becky Christian**</u>
**CR 08-0237 MHP**
**Superseding Indictment**



FILED

JUN 2 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

<u>**Offenses Charged**</u>

| | |
|---|---|
| Count One: | 18 U.S.C. §§ 1832(a)(5) & 371 – Conspiracy to Misappropriate, Receive, Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a Protected Computer, Exceed Authorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer |
| Counts Two through Nine: | 18 U.S.C. §§ 1030(a)(4) & 1030(c)(3)(A) – Unauthorized Access to a Protected Computer with Intent to Defraud and Obtaining Something of Value |
| Count Ten: | 18 U.S.C. §§ 1832(a)(1), 1832(a)(2) & 1832(a)(4) – Theft, Misappropriation, and Unauthorized Downloading of Trade Secrets |
| Count Eleven: | 18 U.S.C. §§ 1832(a)(3) & 1832(a)(4) – Unauthorized Receipt and Possession of Stolen Trade Secrets |
| Counts Twelve through Nineteen: | 18 U.S.C. § 1341 — Mail Fraud |
| Count Twenty: | 18 U.S.C. § 1349 — Conspiracy to Commit Mail Fraud |

<u>**Penalties**</u>

| | |
|---|---|
| Count One: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Counts Two through Nine: | 5 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Count Ten: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Count Eleven: | 10 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |

FILED

| | |
|---|---|
| Counts Twelve through Nineteen: | 20 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |
| Count Twenty: | 20 years' imprisonment, $250,000 fine or twice the gross gain or gross loss, 3 years of supervised release, $100 special assessment |

JUN 2 6 2008

RICHARD W. WIEKING
U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# 𝕺𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO



FILED

JUN 2 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

### UNITED STATES OF AMERICA,

### V.

### DAVID NOSAL and BECKY CHRISTIAN

### DEFENDANT(S).

---

# SUPERSEDING INDICTMENT

18 U.S.C. §§ 1832(a)(5) & 371 – Conspiracy to Misappropriate, Receive, Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a Protected Computer, Exceed Authorized Access to a Protected Computer, and Traffic in a Password Allowing Unauthorized Access to a Protected Computer; 18 U.S.C. §§ 1030(a)(4) & 1030(c)(3)(A) – Unauthorized Access to a Protected Computer with Intent to Defraud and Obtaining Something of Value; 18 U.S.C. §§ 1832(a)(1), 1832(a)(2) & 1832(a)(4) – Theft, Misappropriation, and Unauthorized Downloading of Trade Secrets; 18 U.S.C. §§ 1832(a)(3) & 1832(a)(4) – Unauthorized Receipt and Possession of Stolen Trade Secrets; 18 U.S.C. § 1341 – Mail Fraud; 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud; 18 U.S.C. § 2 – Aiding and Abetting

*INDICT*

A true bill.

_____
Foreman

Filed in open court this ___26___ day of *JUNE 2008*

_____
Clerk

Bail, $ *No process*

1  BRIAN J. STRETCH (CSBN 163973)
   Acting United States Attorney
2

3                                                          FILED

4

5                                                    JUN 2 6 2008

6                                            RICHARD W. WIEKING
                                       CLERK, U.S. DISTRICT COURT
                                     NORTHERN DISTRICT OF CALIFORNIA

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                           SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,        )    No. CR 08-0237 MHP
                                     )
12          Plaintiff,               )    VIOLATIONS: 18 U.S.C. §§ 1832(a)(5) & 371 –
                                     )    Conspiracy to Misappropriate, Receive, Possess,
13          v.                       )    and Transmit Trade Secrets, Gain Unauthorized
                                     )    Access to a Protected Computer, Exceed
14                                   )    Authorized Access to a Protected Computer, and
    DAVID NOSAL and                  )    Traffic in a Password Allowing Unauthorized
15  BECKY CHRISTIAN,                 )    Access to a Protected Computer; 18 U.S.C.
                                     )    §§ 1030(a)(4) & 1030(c)(3)(A) – Unauthorized
16          Defendants.              )    Access to a Protected Computer with Intent to
                                     )    Defraud and Obtaining Something of Value; 18
17                                   )    U.S.C. §§ 1832(a)(1), 1832(a)(2) & 1832(a)(4) –
                                     )    Theft, Misappropriation, and Unauthorized
18                                   )    Downloading of Trade Secrets; 18 U.S.C.
                                     )    §§ 1832(a)(3) & 1832(a)(4) – Unauthorized
19                                   )    Receipt and Possession of Stolen Trade Secrets;
                                     )    18 U.S.C. § 1341 – Mail Fraud; 18 U.S.C. § 1349
20                                   )    – Conspiracy to Commit Mail Fraud; 18 U.S.C.
                                     )    § 2 – Aiding and Abetting
21                                   )
                                     )    SAN FRANCISCO VENUE
22  _____ )

23              S U P E R S E D I N G   I N D I C T M E N T

24       The Grand Jury charges:

25                              BACKGROUND

26       At all times relevant to this Superseding Indictment:

27  Korn/Ferry International

28          1.    Korn/Ferry International ("Korn/Ferry") was an executive search firm


    SUPERSEDING INDICTMENT
    CR 08-0237

1   headquartered in Los Angeles, California. Korn/Ferry also maintained a Silicon Valley office in

2   Redwood City, California, as well as a San Francisco office and other offices throughout the

3   United States and the world. Korn/Ferry was one of the leading providers of executive

4   recruitment services to businesses in the United States. As used herein, the terms "executive

5   search" and "executive recruitment" refer to searches to fill executive, board-of-director, and

6   similar high-level positions, as well as related and similar activities.

7   The Defendants

8        2.     The defendant David Nosal was employed by Korn/Ferry in its Silicon Valley

9   office and elsewhere from approximately April 1996 until approximately October 2004. During

10  his tenure at Korn/Ferry, Nosal held a number of high-level positions, including Regional

11  Managing Director and Office Managing Director. Nosal planned to start a competing executive

12  search firm after terminating his employment with Korn/Ferry. However, under the terms of a

13  Separation and General Release Agreement and an Independent Contractor Agreement (referred

14  to collectively hereafter as the "Nosal-Korn/Ferry Agreements") into which Nosal voluntarily

15  entered with Korn/Ferry, Nosal agreed to serve as an independent contractor to Korn/Ferry from

16  November 1, 2004 through October 15, 2005. Among other promises, Nosal agreed to cooperate

17  with Korn/Ferry on certain ongoing search assignments and agreed not to perform executive

18  search, executive placement, management assessment, or management audit services on behalf of

19  any other entity but Korn/Ferry during the period that the Nosal-Korn/Ferry Agreements were in

20  effect. In exchange, Korn/Ferry was to pay Nosal $25,000 per month during that period and was

21  to pay Nosal lump-sum payments on or before July 31, 2005 and on or before October 15, 2005.

22       3.     The defendant Becky Christian was employed by Korn/Ferry in its Silicon Valley

23  office and elsewhere from approximately September 1999 until approximately January 2005.

24  After she left Korn/Ferry, Christian set up an executive search firm known as Christian &

25  Associates LLC. In truth, however, Christian worked with the defendant Nosal in setting up

26  Nosal's executive search firm and either assisted, or was assisted by, Nosal in conducting

27  executive searches. In general, Christian retained 20% of the revenues from searches that she

28  conducted with Nosal and provided Nosal with the remaining 80%.

SUPERSEDING INDICTMENT
CR 08-0237              -2-

<u>Other Individuals</u>

4.     The individual identified herein as "J.F." was employed by Korn/Ferry from approximately December 1997 to approximately August 2005.  J.F. served as the defendant Nosal's executive assistant prior to Nosal's departure from Korn/Ferry.  After Nosal left Korn/Ferry, J.F. continued to be employed by Korn/Ferry but assisted Nosal in setting up Nosal's new executive search firm.

5.     The individual identified herein as "M.J." was employed by Korn/Ferry from approximately January 2001 to approximately March 2005.  After leaving Korn/Ferry, M.J. worked with the defendant Nosal in setting up Nosal's executive search firm and either assisted, or was assisted by, Nosal in conducting executive searches during approximately the spring and summer of 2005.  Nosal asked M.J. to establish a company in M.J.'s name, so that this company — like Christian & Associates LLC — could be used as a vehicle for Nosal to continue to conduct executive search activities until the expiration of the Nosal-Korn/Ferry Agreements. Nosal proposed the same 80/20 split in revenues with M.J. that Nosal had adopted with the defendant Christian.

<u>The Searcher Database</u>

6.     In performing their work, Korn/Ferry employees relied heavily on the "Searcher" database, a highly confidential and proprietary database of executives and companies.  This database also contained information regarding search engagements that Korn/Ferry had conducted for clients in the past.  Using the "Custom Report" feature of the Searcher database, Korn/Ferry employees quickly could sort through information in the database to create targeted reports on executives, companies, and prior search engagements for use in candidate development for clients and in client presentations.

7.     The information contained in the Searcher database regarding executives, companies, and Korn/Ferry's prior search engagements was the product of the efforts of hundreds of Korn/Ferry employees over many years.  Korn/Ferry considered the Searcher database to be one of the most comprehensive databases of executive candidates in the world.

8.     The information in the Searcher database regarding Korn/Ferry's prior search

SUPERSEDING INDICTMENT
CR 08-0237                  -3-

1 engagements included "source lists" (which were also referred to as "candidate lists"), generally

2 described as lists of candidates that Korn/Ferry presented to client companies with respect to

3 particular positions that those clients were trying to fill. Korn/Ferry considered these source lists

4 to be extremely valuable when initiating subsequent searches for executives for similar positions.

5 The Confidentiality of Information in the Searcher Database

6        9.      Korn/Ferry undertook considerable measures to maintain the confidentiality of the

7 information contained in the Searcher database. These measures included controlling electronic

8 access to the Searcher database and controlling physical access to the computer servers that

9 contained the database. Korn/Ferry employees received unique usernames and created passwords

10 for use on the company's computer systems, including for use in accessing the Searcher database.

11 These usernames and passwords were intended to be used by the Korn/Ferry employee only.

12        10.     Korn/Ferry required all of its employees — including the defendants David Nosal

13 and Becky Christian — to enter into agreements that both explained the proprietary nature of the

14 information disclosed or made available to Korn/Ferry employees (including the information

15 contained in the Searcher database) and restricted the use and disclosure of all such information,

16 except for legitimate Korn/Ferry business. Nosal executed such an agreement on or about April

17 26, 1996. Christian executed such an agreement on or about September 25, 1999.

18        11.     Among other additional measures, Korn/Ferry also declared the confidentiality of

19 information in the Searcher database by placing the phrase "Korn/Ferry Proprietary and

20 Confidential" on every Custom Report generated from the Searcher database. Further, when an

21 individual logged into the Korn/Ferry computer system, that computer system displayed the

22 following notification, in sum and substance:

23            This computer system and information it stores and processes are
             the property of Korn/Ferry. You need specific authority to access
24           any Korn/Ferry system or information and to do so without the
             relevant authority can lead to disciplinary action or criminal
25           prosecution. . . .

26 / / /

27 / / /

28 / / /

SUPERSEDING INDICTMENT
CR 08-0237                              -4-

1   COUNT ONE:    18 U.S.C. §§ 1832(a)(5) & 371 — Conspiracy to Misappropriate, Receive,
                             Possess, and Transmit Trade Secrets, Gain Unauthorized Access to a
2                              Protected Computer, Exceed Authorized Access to a Protected Computer,
                             and Traffic in a Password Allowing Unauthorized Access to a Protected
3                              Computer

4       12.    The factual allegations in paragraphs 1 through 11 are re-alleged and incorporated

5 herein as if set forth in full.

6       13.    Beginning on a date unknown, and continuing to no later than August 2, 2005, in

7 the Northern District of California, and elsewhere, the defendants

8                       DAVID NOSAL and
                      BECKY CHRISTIAN
9

10 did knowingly and intentionally conspire and agree with each other and with other persons, to

11 commit the following offenses: misappropriation, receipt, possession, and transmission of trade

12 secrets, in violation of 18 U.S.C. §§ 1832(a)(1), (a)(2) and (a)(3); unauthorized access to a

13 protected computer, in violation of 18 U.S.C. § 1030(a)(4); exceeding authorized access to a

14 protected computer, in violation of 18 U.S.C. § 1030(a)(4); and trafficking in a password

15 allowing unauthorized access to a protected computer, in violation of 18 U.S.C. § 1030(a)(6)(A).

16                MANNER AND MEANS OF THE CONSPIRACY

17       14.    It was part of the conspiracy that the defendants and co-conspirators would and

18 did knowingly, and with intent to defraud, obtain things of value from Korn/Ferry's computer

19 system, including source lists and other information.

20       15.    It was further part of the conspiracy that the defendants and co-conspirators would

21 and did steal, and without authorization knowingly take by fraud, artifice, and deception, trade

22 secrets from Korn/Ferry's computer system, including source lists.

23       16.    It was further part of the conspiracy that individual co-conspirators and others

24 would obtain these trade secrets and other things of value from Korn/Ferry's computer system

25 prior to and upon termination of their employment with Korn/Ferry by using their own

26 Korn/Ferry usernames and passwords, and did so without authorization and in excess of

27 authorized access.

28       17.    It was further part of the conspiracy that, after their separation from Korn/Ferry,

1  the defendants and co-conspirators would obtain these trade secrets and other things of value

2  from Korn/Ferry's computer system by using, either directly or through J.F., J.F.'s Korn/Ferry

3  username and password, and did so without authorization and in excess of authorized access.

4          18.     It was further part of the conspiracy that the defendants and co-conspirators would

5  and did obtain things of value from Korn/Ferry's computer system; misappropriate Korn/Ferry

6  trade secrets; receive and possess stolen trade secrets; and transmit Korn/Ferry trade secrets to

7  each other, all for the purpose of retaining clients and placing candidates as part of their non-

8  Korn/Ferry executive search activities.

9          OVERT ACTS COMMITTED IN FURTHERANCE OF THE CONSPIRACY

10         19.     In furtherance of the conspiracy and to effect the objects thereof, the following

11  overt acts, among others, were committed in the Northern District of California, and elsewhere:

12  Receipt, Possession, Transmission, and Use of Chief Financial Officer Information from
    Korn/Ferry's Computer System
13

14         a.      On or about April 11, 2005, the defendant Christian sent an e-mail to J.F. stating

15  "It is to difficult to explain the searcher run I would need to log in as you."

16         b.      On or about April 12, 2005, the defendant Christian sent an e-mail to the

17  defendant Nosal attaching three Korn/Ferry source lists of chief financial officers ("CFOs").

18  These source lists originated from search engagements in which Korn/Ferry had been retained to

19  conduct searches for CFOs. Each source list was marked "Korn/Ferry Proprietary &

20  Confidential." Each source list had been downloaded from the Searcher database earlier in the

21  day on April 12, 2005, using J.F.'s Korn/Ferry username and password.

22         c.      On or about April 21, 2005, M.J. sent the defendants Nosal and Christian an e-

23  mail with the subject line "CFO Names/Ideas," which e-mail contained a list of six CFOs with

24  associated contact information. In the e-mail, M.J. stated that the individuals listed were from

25  "the [Company A] CFO search." This was a search engagement on which Nosal and M.J. had

26  worked while at Korn/Ferry. Nosal later responded to M.J.'s e-mail, saying "thank you."

27         d.      On or about April 25, 2005, Company B formally retained Christian & Associates

28  LLC to conduct a search for a CFO. Both the defendant Nosal and the defendant Christian

SUPERSEDING INDICTMENT
CR 08-0237                            -6-

1   worked on and participated in this search.

2       e.    On or about June 1, 2005, the defendant Christian sent an e-mail to two

3   executives of Company B with the subject line "CFO Update." The defendant Nosal was copied

4   on this e-mail. This e-mail stated, in part, "We wanted to give you an update as it relates to the

5   CFO search," and then set out several possible candidates for the CFO position at Company B,

6   among them, three individuals who were listed on the source lists that Christian had sent to Nosal

7   on or about April 12, 2005.

8       f.    On or about July 12, 2005, using a computer at Nosal's new offices in San

9   Francisco, an individual remotely logged into Korn/Ferry's computer network using J.F.'s

10  Korn/Ferry username and password. Thereafter, among other activities, a co-conspirator ran

11  queries for information on two of the candidates for the Company B CFO position. In August

12  2005, Company B announced that it had hired one of those two candidates as its CFO.

13      g.    The defendant Christian also sent two other e-mails to the defendant Nosal on

14  April 12, 2005 containing lists of CFOs in the medical industry in relation to a search that Nosal

15  and Christian were performing for another company. Information in each of these e-mails was

16  "cut and pasted" from a source list in Korn/Ferry's Searcher database.

17  Use of Position Specifications from Korn/Ferry's Computer System

18      h.    On or about April 25, 2005, the defendant Nosal was retained by Company C to

19  conduct a search for a person to fill a senior vice president of human resources position. In an e-

20  mail dated April 25, 2005, the CEO of Company C informed Nosal that the CEO did not have a

21  job description for the subject position and had asked Nosal to draft one. The e-mail stated:

22          David, you are on for the HR search. I don't have a job
            description. You guys need to craft one and get me to
23          approve........please make sure that the payment terms are the
            aggressive ones you quoted. thx.
24

25      i.    On April 28, 2005, the defendant Christian sent the CEO of Company C a

26  position specification that was in large part identical in sum and substance to a position

27  specification recently obtained by J.F. from Korn/Ferry's computer system. This e-mail was

28  signed "David & Becky," and Nosal was copied on this e-mail.

SUPERSEDING INDICTMENT
CR 08-0237                    -7-

1 | <u>Other Instances of Misappropriation or Use of Information from Korn/Ferry's Computer System</u>

2 |       j.     During approximately the fourth quarter of 2004, immediately prior to her

3 | separation from Korn/Ferry in approximately January 2005, the defendant Christian created and

4 | downloaded Searcher Custom Reports containing over 3000 records. Christian took copies of

5 | these reports with her when she terminated her employment with Korn/Ferry.

6 |       k.     On or about May 3, 2005, the defendant Christian sent an e-mail to the defendant

7 | Nosal and to M.J. with an attachment, indicating that the attachment related to a search that was

8 | being conducted for Company C. The attachment was a Searcher Custom Report spreadsheet

9 | containing approximately 19 executive names with contact information. The header of the

10 | spreadsheet contained the heading "Korn/Ferry International San Francisco." The defendant

11 | Nosal responded in an e-mail the same day, saying "thanks."

12 |       l.     On or about May 26, 2005, M.J. sent two e-mails to J.F. containing the names of a

13 | total of approximately 17 individuals regarding whom J.F. was to obtain information from the

14 | Searcher database. M.J. obtained some of these names from Nosal. In the second e-mail, M.J.

15 | also requested information regarding a prior Korn/Ferry search engagement. In response to the

16 | defendant M.J.'s e-mails, J.F. obtained each individual's information from the Searcher database

17 | and obtained the information in that database regarding the prior Korn/Ferry search engagement

18 | identified by M.J. J.F. then copied all of the files containing the requested information onto a

19 | CD. J.F. later provided this CD to M.J. The defendant Nosal later used some or all of the

20 | information obtained from the Searcher database in a "pitch" meeting with representatives from

21 | Company D in which Nosal was attempting to be retained by that company to conduct an

22 | executive search and related activities.

23 |       m.    At M.J.'s request, on or about June 3, 2005, J.F. performed a Searcher query for

24 | human resource managers working for various companies. In response to J.F.'s query, the

25 | Searcher database generated a Custom Report yielding approximately 366 executives with their

26 | pertinent information. J.F. then exported the Custom Report to a Microsoft Excel spreadsheet

27 | titled "Choc Chip Cookie Recipes," and saved the file to her computer Desktop folder. J.F. then

28 | copied the "Choc Chip Cookie Recipes" file onto a CD titled "ChocChip Cookies." J.F. later

SUPERSEDING INDICTMENT
CR 08-0237                -8-

1 | provided this CD to M.J. for use in the Company C search.

2 |      n.     On or about June 23, 2005, J.F. performed a Searcher query for senior vice

3 | president supply chain managers working at various companies. In response to J.F.'s query, the

4 | Searcher database generated a Custom Report yielding approximately 1205 executives with their

5 | pertinent information. J.F. then exported the Custom Report to a Microsoft Excel spreadsheet

6 | titled "Book2," and saved the file to her computer Desktop folder. J.F. then copied the "Book2"

7 | file onto a CD titled "Book2 Genesis." J.F. later provided the "Book2" file to the defendant

8 | Christian for her use in an executive search.

9 |      o.     On or about July 29, 2005, using M.J.'s computer located in Nosal's new offices

10 | in San Francisco, J.F. remotely logged into Korn/Ferry's computer network with her Korn/Ferry

11 | username and password. Once logged in, J.F. returned control of the computer to M.J. M.J. then

12 | proceeded to query Korn/Ferry's Searcher database and download information, including 25

13 | Korn/Ferry source lists, from that database onto the computer.

14 |     All in violation of Title 18, United States Code, Sections 1832(a)(5) and 371.

15 | / / /

16 | / / /

17 | / / /

18 | / / /

19 | / / /

20 | / / /

21 | / / /

22 | / / /

23 | / / /

24 | / / /

25 | / / /

26 | / / /

27 | / / /

28 | / / /

SUPERSEDING INDICTMENT
CR 08-0237                 -9-

COUNTS TWO
THROUGH NINE:    18 U.S.C. §§ 1030(a)(4), 1030(c)(3)(A) & 2 — Unauthorized Access to a
Protected Computer with Intent to Defraud and Obtaining Something of
Value and Aiding and Abetting

        20.    The factual allegations in paragraphs 1 through 11 and 13 through19 are re-

alleged and incorporated herein as if set forth in full.

        21.    On or about the dates set forth in the separate counts below, in the Northern

District of California, and elsewhere, the defendants

DAVID NOSAL and
BECKY CHRISTIAN

did knowingly and with intent to defraud access a protected computer belonging to Korn/Ferry,

without authorization and by exceeding authorized access, and by means of such conduct did

further the intended fraud and obtain something of value, to wit, source lists and other

information belonging to Korn/Ferry:

| COUNT | DATE | ITEMS OBTAINED | ACCOUNT USED TO GAIN ACCESS |
|---|---|---|---|
| 2 | December 6, 2004 to December 8, 2004 | Multiple source lists from Searcher, and other documents | Korn/Ferry computer user account of the defendant Christian |
| 3 | April 12, 2005 | Three Korn/Ferry source lists relating to prior searches for CFOs | Korn/Ferry computer user account of J.F. |
| 4 | April 27, 2005 | Position specifications for vice presidents of human resources at two different companies | Korn/Ferry computer user account of J.F. |
| 5 | May 26, 2005 | Information regarding 17 individuals and a prior Korn/Ferry search engagement | Korn/Ferry computer user account of J.F. |
| 6 | June 3, 2005 | Information regarding approximately 366 human resource managers | Korn/Ferry computer user account of J.F. |
| 7 | June 23, 2005 | Information regarding approximately 1205 supply chain managers | Korn/Ferry computer user account of J.F. |

SUPERSEDING INDICTMENT
CR 08-0237                         -10-

| COUNT | DATE | ITEMS OBTAINED | ACCOUNT USED TO GAIN ACCESS |
|---|---|---|---|
| 8 | July 12, 2005 | Information regarding two individuals who were candidates for Company B CFO position | Korn/Ferry computer user account of J.F. |
| 9 | July 29, 2005 | 25 Korn/Ferry source lists relating to prior searches | Korn/Ferry computer user account of J.F. |

All in violation of Title 18, United States Code, Sections 1030(a)(4), 1030(c)(3)(A) and 2.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

SUPERSEDING INDICTMENT
CR 08-0237                    -11-

1    COUNT TEN:         18 U.S.C. §§ 1832(a)(1), 1832(a)(2), 1832(a)(4) & 2 — Theft,
2                               Misappropriation, and Unauthorized Downloading of Trade Secrets and
                                Aiding and Abetting

3         22.    The factual allegations in paragraphs 1 through 11 and paragraphs 13 through 19

4    are re-alleged and incorporated herein as if set forth in full.

5         23.    On or about April 12, 2005, in the Northern District of California, and elsewhere,

6    the defendants

7                               DAVID NOSAL and
                                BECKY CHRISTIAN,
8

9    with the intent to convert trade secrets belonging to Korn/Ferry, specifically, three Korn/Ferry

10   source lists relating to prior searches for CFOs, as referred to in paragraph 19.b, to the economic

11   benefit of someone other than Korn/Ferry, which trade secrets were related to and included in

12   products that were produced for and placed in interstate and foreign commerce, did knowingly

13   steal and without authorization appropriate, take, carry away, and conceal and by fraud, artifice,

14   and deception obtain such information, and did knowingly and without authorization download,

15   copy, and duplicate such information, from Korn/Ferry's computer system, and did attempt to do

16   so, intending and knowing that such acts would injure Korn/Ferry.

17       All in violation of Title 18, United States Code, Sections 1832(a)(1), 1832(a)(2), 1832(a)(4),

18   and 2.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

SUPERSEDING INDICTMENT
CR 08-0237                              -12-

1  COUNT ELEVEN:    18 U.S.C. §§ 1832(a)(3), 1832(a)(4) & 2 — Unauthorized Receipt and
2                                  Possession of Stolen Trade Secrets and Aiding and Abetting

3       24.    The factual allegations in paragraphs 1 through 11 and paragraphs 13 through 19

4  are re-alleged and incorporated herein as if set forth in full.

5       25.    On or about April 12, 2005, in the Northern District of California, and elsewhere,

6  the defendants

7                          DAVID NOSAL and
                          BECKY CHRISTIAN,
8

9  with the intent to convert trade secrets belonging to Korn/Ferry, specifically, three Korn/Ferry

10  source lists relating to prior searches for CFOs and information regarding CFOs that was "cut

11  and pasted" from a source list in Searcher, as referred to in paragraphs 19.b and 19.g, to the

12  economic benefit of someone other than Korn/Ferry, which trade secrets were related to and

13  included in products that were produced for and placed in interstate and foreign commerce, did

14  knowingly receive and possess such information, and did attempt to do so, knowing the same to

15  have been stolen and appropriated, obtained, and converted without authorization, intending and

16  knowing that such acts would injure Korn/Ferry.

17      All in violation of Title 18, United States Code, Sections 1832(a)(3), 1832(a)(4), and 2.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///


SUPERSEDING INDICTMENT
CR 08-0237                              -13-

1  COUNTS TWELVE
2  THROUGH NINETEEN:    18 U.S.C. §§ 1341 & 2 — Mail Fraud and Aiding and Abetting

3        26.    The factual allegations in paragraphs 1 through 11 and paragraphs 13 through 19

4  are re-alleged and incorporated herein as if set forth in full.

5        27.    Beginning on a date unknown to the Grand Jury, but by no later than in or about

6  November 2004 and continuing to in or about August 2005, in the Northern District of

7  California, and elsewhere, the defendants

8                      DAVID NOSAL and
                       BECKY CHRISTIAN
9

10 did devise and intend to devise a scheme and artifice to defraud as to a material matter, and to

11 obtain money and property by means of material false and fraudulent pretenses, representations,

12 and promises, which scheme and artifice is summarized below.  In sum and substance, the

13 defendants Nosal and Christian, and others involved in the scheme and artifice, provided material

14 false information to, and purposefully omitted and concealed material information from,

15 Korn/Ferry regarding the defendant Nosal's executive search-related activities that were in

16 violation of the Nosal-Korn/Ferry Agreements.

17                      SCHEME TO DEFRAUD

18        28.    It was part of the defendants' scheme and artifice that Nosal and Christian

19 directed others to take without authorization and in excess of authorized access things of value

20 and trade secrets belonging to Korn/Ferry from Korn/Ferry's computer system.

21        29.    It was part of the defendants' scheme and artifice that Nosal and Christian used,

22 directed others to use, and ratified others' use of things of value and trade secrets stolen from

23 Korn/Ferry's computer system to conduct executive searches and related activities.

24        30.    It was further part of the defendants' scheme and artifice that, after Nosal entered

25 into the Nosal-Korn/Ferry Agreements, Nosal took actions to circumvent those agreements by

26 conducting his own executive search-related activities.  Nosal did so, at least in part, so that he

27 could earn additional income over and above what Korn/Ferry had agreed to pay him during the

28 term of the Nosal-Korn/Ferry Agreements.  In 2005, and unbeknownst to Korn/Ferry, Nosal

SUPERSEDING INDICTMENT
CR 08-0237                          -14-

1  received at least $500,000 in gross receipts for his executive search-related activities, through

2  payments from Christian & Associates LLC.

3       31.    It was further part of the defendants' scheme and artifice that Christian established

4  Christian & Associates LLC as a vehicle through which Nosal could conduct his executive search

5  activities. Nosal and Christian agreed that Nosal would receive approximately 80% of the

6  revenues of Christian & Associates LLC.

7       32.    It was further part of the scheme and artifice that the defendant Nosal

8  (a) affirmatively misrepresented on numerous occasions to Korn/Ferry executives that he was

9  complying with the Nosal-Korn/Ferry Agreements; (b) did not notify Korn/Ferry that he was

10  engaging in his own executive search activities; and (c) otherwise concealed and attempted to

11  conceal from Korn/Ferry that he was engaging in his own executive search activities. Nosal did

12  so, at least in part, so that he could continue to receive monthly independent contractor payments

13  of $25,000 from Korn/Ferry and so that he remained eligible to be paid the lump-sum payments

14  envisioned in the Nosal-Korn/Ferry Agreements.

15       33.    It was further part of the conspiracy that, for the purpose of concealing his

16  activities from Korn/Ferry and others, the defendant would use the fictitious name "David

17  Nelson" with candidates in relation to searches that he was conducting during the time that he

18  was receiving payments from Korn/Ferry under the Nosal-Korn/Ferry Agreements. Further,

19  because of her continuing employment with Korn/Ferry, J.F. also would use the fictitious name

20  "S.S." in relation to searches on which she was assisting Nosal.

21  <div align="center">THE USE OF THE MAILS</div>

22       34.    On or about the dates listed below, for the purpose of executing the scheme

23  and artifice set forth above, and attempting to do so, the defendants

24  <div align="center">DAVID NOSAL and</div>
25  <div align="center">BECKY CHRISTIAN,</div>

26  as more specifically set forth below, did knowingly cause to be delivered by the United States

27  Postal Service and private and commercial interstate carrier according to the direction thereon,

28  ///

SUPERSEDING INDICTMENT
CR 08-0237                     -15-

the matters and things as described below:

| COUNT | DATE OF MAILING | SENDER | RECIPIENT ADDRESS | ITEM MAILED |
|---|---|---|---|---|
| 12 | November 23, 2004 | Korn/Ferry | Danville, California | Check number 412547 in the amount of $25,000 |
| 13 | December 21, 2004 | Korn/Ferry | Danville, California | Check number 413453 in the amount of $25,000 |
| 14 | January 25, 2005 | Korn/Ferry | Danville, California | Check number 414403 in the amount of $25,000 |
| 15 | February 23, 2005 | Korn/Ferry | Danville, California | Check number 415300 in the amount of $25,000 |
| 16 | March 22, 2005 | Korn/Ferry | Danville, California | Check number 416550 in the amount of $25,000 |
| 17 | April 21, 2005 | Korn/Ferry | Danville, California | Check number 417790 in the amount of $25,000 |
| 18 | May 23, 2005 | Korn/Ferry | Danville, California | Check number 418864 in the amount of $25,000 |
| 19 | June 21, 2005 | Korn/Ferry | Danville, California | Check number 419783 in the amount of $25,000 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

///
///
///
///
///
///
///
///
///

SUPERSEDING INDICTMENT
CR 08-0237                    -16-

1    <u>COUNT TWENTY</u>:    18 U.S.C. § 1349 — Conspiracy to Commit Mail Fraud

2          35.    The factual allegations in paragraphs 1 through 11, paragraphs 13 through 19, and

3 paragraphs 27 through 34, including the scheme to defraud set out therein, are re-alleged and

4 incorporated herein as if set forth in full.

5          36.    Beginning on a date unknown to the Grand Jury, but by no later than in or about

6 November 2004 and continuing to in or about August 2005, in the Northern District of

7 California, and elsewhere, the defendants

8 <center>DAVID NOSAL and<br>BECKY CHRISTIAN</center>

9

10 did knowingly and intentionally conspire and agree with each other to commit mail fraud, in

11 violation of 18 U.S.C. § 1341.

12       <u>OVERT ACTS COMMITTED IN FURTHERANCE OF THE CONSPIRACY</u>

13          37.    In furtherance of the conspiracy and to effect the objects thereof, the following

14 overt acts, among others, were committed in the Northern District of California, and elsewhere:

15          a.    In January 2005, the defendant Christian set up an executive search firm known as

16 Christian & Associates LLC;

17          b.    After his separation from Korn/Ferry and during the period that the Nosal-

18 Korn/Ferry Agreements were in effect, the defendant Nosal solicited search engagements from

19 various companies, including the companies referred to in paragraph 19, above.  On at least some

20 occasions, Nosal requested that these companies formally retain Christian & Associates LLC to

21 perform any search engagements and remit any fees owed to Christian & Associates LLC, rather

22 than to Nosal;

23          c.    The defendant Christian remitted approximately 80% of the fees paid to her from

24 these companies to the defendant Nosal;

25          d.    On or about April 25, 2005, Company B formally retained Christian & Associates

26 LLC to conduct a search for a CFO.  Both the defendant Nosal and the defendant Christian

27 worked on and participated in this search.

28          e.    On or about April 25, 2005, the defendant Nosal was retained by Company C to

SUPERSEDING INDICTMENT
CR 08-0237               -17-

1    conduct a search for a person to fill a senior vice president of human resources position.

2        f.    After his separation from Korn/Ferry, the defendant Nosal participated in regular

3    telephonic meetings with Korn/Ferry's general counsel or another Korn/Ferry executive, or with

4    both, in which Nosal indicated that he remained in compliance with the Nosal-Korn/Ferry

5    Agreements. At no time during these meetings did Nosal ever disclose that he had been and was

6    currently conducting or assisting in non-Korn/Ferry executive search activities after October

7    2004.

8        g.    On or about July 7, 2005, the defendant Christian sent an e-mail to the defendant

9    Nosal reminding him that, with respect to appointments that J.F. was scheduling on behalf of

10    Nosal and Christian with respect to their executive search activities, J.F. used the name "S.S."

11    The text of that e-mail read, in pertinent part: "Member Jfl [J.F.] is now called [S.S.] as it relates

12    to 'our new assistant.'"

13        h.    On or about July 22, 2005, the defendant Nosal sent an e-mail to the defendant

14    Christian and J.F. in which he instructed J.F. to use the name "David Nelson" instead of "David

15    Nosal" when scheduling interviews with recruits. The text of that e-mail read, in pertinent part:

16        B [Christian] and Shelly [J.F.] - all of these people need to be seen
         asap no later then Wednesday aug 3rd. Please schedule the majority
17        for B to see the mon/tues/wed she is back. I can see a few but
         visibility is not good. Also, if scheduling me please use David
18        Nelson for my name.

19        All in violation of Title 18, United States Code, Section 1349.

20    DATED:                            A TRUE BILL.

21        6 - 26 - 08

22

23                                     FOREPERSON

24

25    MATTHEW A. PARRELLA
      Chief, CHIP Unit

26

27    Approved as to Form:
                          KYLE F. WALDINGER
28                        Assistant United States Attorney

SUPERSEDING INDICTMENT
CR 08-0237                              -18-